Elizabeth BARRETT, Plaintiff,

v.

Martin HOFFMAN, et al., Defendants.

Elizabeth BARRETT, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Elizabeth BARRETT, Plaintiff,

v.

Frank M. ARTHUR, et al., Defendants.

Nos. 76 Civ. 381 (LWP), 76 Civ. 1061 (LWP) and 78 Civ. 3762 (LWP).

United States District Court,
S. D. New York.

Aug. 27, 1981.

Richard P. Schifter, Arnold & Porter, Washington, D. C., Herbert K. Lippman, New York City, for plaintiffs.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City by Susan M. Campbell, John M. O'Connor, Asst. U. S. Attys., New York City, for the United States and Federal defendants.

Michael Futterman, Bower & Gardner, New York City, for defendant James P. Cattell.

Frederick H. Block, New York City, for defendant David Marcus.

Paul L. Pileckas, Pileckas & Pileckas, Rome, N. Y., for defendant Newton Bigelow.

## OPINION AND ORDER

PIERCE, District Judge.

These actions arise from the tragic death of Harold Blauer on January 8, 1953 at the New York State Psychiatric Institute ("the Institute"). The 42 year old Blauer had been voluntarily admitted to the Institute for psychiatric treatment following shock therapy at Bellevue Hospital. Shortly after his death Blauer's ex-wife commenced an action on behalf of the Estate against the State of New York in the New York State Court of Claims for wrongful death and negligence in administering to Blauer injections of allegedly toxic substances. The Estate settled the claims against the State in 1955 for $18,000.

Reasserting claims similar to those stated in the former state action, the complaints herein allege that while Blauer was a patient at the Institute he was involuntarily treated with unknown drugs "solely for experimental purposes, without any proper diagnostic or therapeutic purposes thereof and without proper information as to the

nature, composition and effects of those drugs." (*Barrett v. Hoffman*, Complaint ¶ 33). An additional allegation is made that the drugs were supplied to the Institute pursuant to "a 1951 secret contract" between the Chemical Corps Procurement Agency of the Department of the Army and the New York State Psychiatric Institute (*Barrett v. Hoffman*, Complaint ¶ 44)[1] and were given to Blauer "solely to test their efficacy as chemical warfare weapons." (Plaintiffs' Rule 9(g) Statement). The gravamen of plaintiffs'[2] present claim in the current three civil rights actions is that salient facts surrounding Harold Blauer's death were withheld from the Estate at the time of the settlement in the state court action. Defendants move to dismiss the complaints herein based upon a variety of legal theories. For the reasons discussed below, the motions are granted on the grounds that actions are time barred.

## INTRODUCTION

It is not disputed that the federal government, the Institute and their representatives secretly conducted drug tests on Blauer. Nor is it disputed that the Estate was represented by counsel[3] and settled its claims with incomplete knowledge of the full panoply of facts surrounding the decedent's death. At issue here is whether decedent's Estate, injured by grossly offensive acts of government may obtain additional redress in federal court a quarter of a century after the injuries were sustained, based upon relatively recent revelations by the federal government of its involvement in the events which led to Blauer's death.

After careful consideration of the facts and history of plaintiffs' claims, and of the applicable law, the Court concludes that these actions are time-barred by the relevant statutes of limitations and that these bars cannot be lifted by application of equitable tolling principles. Although the Court holds for defendants herein on the affirmative defense asserted, the Court's decision should not be construed as countenancing the government's actions in testing drugs on human subjects or in failing to timely reveal the full extent of its involvement in Blauer's death. As discussed hereinbelow, the failure of plaintiff's predecessor to timely and diligently press her rights in the prior action leads this Court to conclude that the current suits present no legally cognizable claim for relief in the federal courts.[4]

Before turning to the issues presented herein, a review of the history of this controversy is warranted.

## FACTS

Harold Blauer was survived by his daughters, Belinda and Elizabeth (the plaintiff herein), and by his ex-wife, Amy Blauer. The Blauers had been divorced in August of 1952. Soon after Harold Blauer's death, Amy Blauer retained an attorney from a large Manhattan law firm to investigate her ex-husband's death and to take appropriate legal action. The autopsy report which the firm obtained revealed the cause of death to be: "Coronary arteriosclerosis; sudden death after intravenous injection of a mescaline derivative, January 8, 1953."

1. Similar allegations are made in each of the companion cases. *See Barrett v. United States*, ¶¶ 19 and 22; *Barrett v. Arthur*, ¶¶ 19 and 27.

2. As used herein plaintiff in the singular refers to Elizabeth Barrett; plaintiffs refers to Elizabeth Barrett individually and as Administratrix of the Estate of Harold Blauer.

3. Amy Blauer was originally represented by the law firm of Kaye, Scholer, Fierman and Hayes. On June 21, 1954, during the course of the State Court of Claims litigation, Blauer replaced the Kaye, Scholer firm with the law firm of O'Dwyer & Bernstein.

4. It is by now a fundamental precept that federal courts are courts of limited jurisdiction with authority to adjudicate specific controversies between adverse litigants within the parameters of the Constitution, Acts of Congress and case law. Even where federal subject matter jurisdiction may properly be found, defenses available to the parties—statutes of limitations, res judicata, defects in service, etc.—can further operate to limit the Court's power to adjudicate the merits of a dispute. Adherence to such limitations on the Court's powers is essential to continued and predictable administration of justice.

Members of the firm also interviewed Mrs. Blauer, obtained copies of the death certificate, and contacted at least one physician to discuss the drug mescaline.

Thereafter, on April 2, 1953, Amy Blauer, acting as Administratrix of the Estate of Harold Blauer, commenced an action against the State of New York in the New York State Court of Claims. The complaint charged:

> "The State of New York, by its agents, servants or employees, negligently, carelessly and improperly caused and permitted a substance to be administered to said decedent by injection; that although the State of New York prior to such date, administered such substance to decedent by injection and although, on such prior occasions, said decedent had reacted adversely and was made violently ill from the effects thereof and although the State of New York had knowledge of such adverse reaction and violent illness on the part of the decedent, it nevertheless negligently, carelessly and improperly administered said substance on the date in question to decedent; that the said substance so administered by the State of New York as aforesaid to decedent was toxic and dangerous; that The State of New York negligently, carelessly and improperly caused and permitted the same to be so administered by an inexperienced, incompetent and improper person; that The State of New York negligently, carelessly and improperly caused and permitted an overdose of the same to be so administered to decedent; that The State of New York, after the administration of said substance as aforesaid, and upon the said decedent thereupon reacting adversely, further negligently and carelessly failed to apply the proper remedies to revive decedent from the effects of said substance so administered to decedent."

(Ct. of Claims Complaint ¶ 13)

The complaint further charged: "[A]s a result of the foregoing said decedent died on January 3, 1953." (Ct. of Claims Complaint ¶ 14). The Estate commenced no action against either the physicians at the Institute or the Institute itself.

By Order dated January 4, 1954 Judge George Sylvester of the New York State Court of Claims granted the Estate's motion "for inspection of the records pertaining to Harold Blauer ..." and for an examination of Drs. G. Schnack and James Cattell, the treating physicians. By the terms of that order relevant records were to be produced, and the Doctors examined at the Institute on January 12, 1954. Plaintiffs aver that this order was "apparently deliberately ignored." (*Barrett v. Hoffman* Complaint ¶ 40).

On May 17, 1955, with benefit of counsel but apparently without having pursued discovery from the defendant, Amy Blauer settled the Estate's claim against the State of New York for the sum of $18,000, and executed a general release. The settlement and release were approved after a two-day hearing in May of 1955 before Judge Fred A. Young of the New York State Court of Claims. The transcript of that hearing has been submitted by several of the parties herein. During that hearing Mrs. Blauer testified that she was aware that the hospital had administered a course of drug treatment for the purpose of making drug studies of her ex-husband's mental condition to which he had reacted negatively. She also revealed that to the best of her knowledge Harold Blauer had never suffered from a coronary condition. Mrs. Blauer indicated that she was accepting the settlement without duress or pressure and that she understood that the settlement sum of $18,000 would be the only award she would receive on her claim.

Testimony was also received during the State Court of Claims hearings from Dr. Paul Hoch, the principal research psychiatrist at the Institute. Hoch testified that Blauer was injected with drugs as a part of a chemical therapy research project, that the drug study did not comport with standards acceptable in clinical practice at the time, and that Blauer had died directly as a result of the injection of the drug. Dr. Hoch was only questioned by David Marcus,

Assistant Attorney General for the State of New York; Amy Blauer's attorney conducted no examination.

Proposed findings of fact and conclusions of law were apparently submitted by Marcus with the acquiescence of Amy Blauer's attorney. Marcus emphasized on the record that, if the Court approved the settlement, the releases to be executed ran to "the State of New York, the New York Psychiatric Institute and all the doctors, agents and employees thereof; and to the organization, group, governmental body or agency which furnished the drugs used in the drug study which resulted in the death of Harold Blauer." The release executed by Amy Blauer on May 17, 1955 contained similar language.[5]

Twenty years later, in August of 1975, approximately one year after Amy Blauer's death, the Secretary of the Army issued a press release announcing the discovery of a file revealing the death of a 42 year old male civilian during the course of chemical compound test programs administered by the Army to determine the clinical effects of psychochemical agents on the psychiatric behavior of human subjects. Harold Blauer was that male civilian.

From the Army file Elizabeth Barrett, Blauer's daughter, allegedly discovered that the State of New York and the federal government had reached an agreement in 1954 whereby the United States would pay half of any settlement agreement reached by the State of New York in the Blauer

State Court of Claims action if the purpose and role of the federal government in providing the drugs were not revealed.[6] It is undisputed that the federal government paid $9,000 of the $18,000 settlement amount received by the Estate.

In September 1975, Elizabeth Barrett, filed an administrative claim with the United States pursuant to the requirements of the Federal Tort Claims Act (28 U.S.C. § 2675) alleging negligence by employees of the federal government in the death of Harold Blauer. The United States made no determination of the merits of the claim. Late in 1975, Elizabeth Barrett instituted an additional proceeding in the New York State Court of Claims to grant discovery and inspection prior to commencing an action. (NYCPLR § 3102(c)). On January 9, 1976 the Court of Claims denied her application for discovery and held that the 1955 settlement and judgment in the State Court of Claims barred further claims in that Court arising from the death of Harold Blauer. Referring to the circumstances surrounding the earlier settlement, the Court noted: "[I]t is apparent to the Court that the Claimant had sufficient information to pursue her claim. The only thing that the Claimant in that action did not have was information pertaining to the involvement of the United States government, through the Department of the Army. The Court must properly question what difference this information would have had with regard to that claim." *Barrett v. New York*, 85 Misc.2d 456, 461, 378 N.Y.S.2d 946, 951 (Ct.Cl.1976).

5. The release stated in relevant part that "... AMY BLAUER, as Administratrix of the Goods, Chattels and Credits of HAROLD BLAUER, ... in consideration of the sum of EIGHTEEN THOUSAND ($18,000.00/100) DOLLARS ... paid by The State of New York, New York State Psychiatric Institute, all doctors, agents and employees thereof and the organization, group, governmental body or agency which furnished the drug used in the drug studies which resulted in the death of HAROLD BLAUER ... remise, release, and forever discharge ... the said State of New York, New York State Psychiatric Institute, all doctors, agents and employees thereof and the organization, group, governmental body or agency which furnished the drug used in the drug studies which resulted in the death of

HAROLD BLAUER ... from all and all manner of action and actions, cause and causes of action, suits, debts, dues ... which against them I ever had, now have or which I or my heirs executors, or administrators, hereafter can, shall or may have ..." (Exh. JJ, Def. Cattell's Motion to Dismiss).

6. Prior to the New York State Court of Claims settlement hearing David Marcus, the Assistant Attorney General representing the State, revealed to Judge Young in an ex parte chambers conference the involvement of the United States government in supplying the drugs administered to Harold Blauer and the classified status of many of the documents involved in the action.

On January 22, 1976 having failed to obtain the relief she sought in the State Court of Claims, Elizabeth Barrett, individually, commenced an action in this Court pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986 and the Fifth, Ninth and Fourteenth Amendments.[7] The complaint charged that defendants—officials of the Department of the Army and the Department of Justice, and physicians at the Institute—conspired "to conduct a wide-scale experimental drug program upon human subjects" (Complaint ¶ 32) and "to cover up the existence of the aforementioned wide-scale experimental drug program upon human subjects" (Complaint ¶ 34) and "to inflict cruel and unusual punishment upon Blauer . . . and to deprive plaintiff, Blauer and others of life, liberty and property without due process of law and of the equal protection of the laws." (Complaint ¶ 36).

On March 4, 1976 Elizabeth Barrett, individually and as Administratrix of the Estate of Harold Blauer, commenced an action against the United States of America, the Institute, the State of New York and several named state officials and doctors at the Institute.[8] Predicating her claims for relief on the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671, et seq.) and principles of pendent jurisdiction, Barrett charged that defendants wrongfully administered drugs to Blauer without his consent "solely for experimental purposes" which resulted in his enduring "pain, suffering, . . . inconvenience . . . [and] death." (Complaint ¶¶ 19, 20). The complaint also alleged that the drugs were administered as a part of a secret contract between the Army and the Institute, the existence of which Amy Blauer was unaware when she instituted her action in the New York State Court of Claims in 1953. (Complaint ¶¶ 22–24).

On August 14, 1978 Elizabeth Barrett, individually and as Administratrix of the Estate of Harold Blauer, commenced a third action in this Court against officials of the Department of Justice, the Department of the Army and the Institute.[9] The averments of the complaint, brought pursuant to 42 U.S.C. § 1983 and the Fifth, Ninth and Fourteenth Amendments to the Constitution, were virtually identical to those set forth in *Barrett v. Hoffman,* 76 Civ. 381.

The defendants in each of these actions moved to dismiss based upon a variety of legal theories including, *inter alia,* failure to state a claim, lack of personal jurisdiction, immunity, statute of limitations and res judicata. (*See,* Opinions and Orders of this Court dated, March 30, 1976, September 8, 1976, October 26, 1976, March 15, 1977, and March 18, 1980). By Orders dated March 30, 1976 and March 15, 1977, this Court stayed determination of defendants' motions to dismiss on grounds of res judicata, release, and statute of limitations and authorized limited discovery on these issues.

Having proceeded with discovery under the supervision of Magistrate Harold Raby for approximately four years, the parties in these actions have submitted to the Court voluminous records including, *inter alia,* copies of Harold Blauer's hospital records,

---

7. *Barrett v. Hoffman,* et al., 76 Civ. 381. The sole claim now pressed in this action is deprivation of constitutional rights in violation of 42 U.S.C. § 1983. *See* Opinions and Orders of this Court dated March 30, 1976 and September 8, 1976. The defendants remaining in this action are: David Marcus, the Assistant Attorney General who represented the State of New York in the State Court of Claims action in 1953; Van Sim, a physician employed by the Department of the Army; George Leonard, an employee of the Department of Justice; Newton Bigelow, who was Commissioner of the New York State Department of Mental Hygiene; James Cattell, a physician employed by the State of New York who treated Blauer at the Institute; the Estate of Amadeo Marrazzi who was the Chief of the Clinical Research Division, Chemical Corps Medical Laboratories of the Department of the Army; William Creasey, a General in the Department of the Army; John Derrick, Harris North and Herbert Greer, Colonels in the Department of the Army.

8. *Barrett v. United States, et al.,* 76 Civ. 1061. Only the United States government remains a defendant in this action. *See* Opinions and Orders of this Court dated October 26, 1976 and March 17, 1977.

9. *Barrett v. Arthur, et al.,* 78 Civ. 3762. Frederick Lough, legal advisor to the Chief Chemical Officer of the Army, is the sole remaining defendant in this action.

memoranda from the files of Amy Blauer's former attorneys regarding the State Court of Claims litigation commenced in 1953, and several formerly classified government documents regarding the experimental drug testing in which Blauer was allegedly involved.

Under these circumstances where the Court has been presented with submissions and documents which are outside the pleadings, the motions to dismiss herein are considered to be motions for summary judgment pursuant to Fed.R.Civ.P. 56. Construing the pleadings and evidentiary submissions of the parties in the light most favorable to the plaintiffs, *Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976), the Court concludes that there are no genuine issues of material fact which must be determined at trial relevant to the issue of when plaintiffs' cause of action accrued. The Court concludes that the cause of action herein accrued not later than May of 1955 when plaintiff's mother, acting on behalf of the Estate, knew of the injury and the cause of the injury which Harold Blauer sustained. The § 1983 actions herein were not commenced until 1976 and 1978 and no claim under the Federal Tort Claims Act was made to the United States Government until 1975. Therefore, as discussed hereinbelow, under the applicable statute of limitations the claims of the plaintiffs are time barred.[10]

## CONSTITUTIONAL CLAIMS

Before turning to the statute of limitations issues, it is necessary to set forth with particularity the parameters of the constitutional claims for which plaintiffs seek redress under § 1983.

■ It is by now axiomatic that a plaintiff asserting a cause of action under § 1983 must demonstrate that she has been deprived of a right, privilege or immunity secured by the constitution and laws of the United States. *Paul v. Davis*, 424 U.S. 693,

700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Kletschka v. Driver*, 411 F.2d 436, 447 (2d Cir. 1969). This Court has previously held that the charge that Harold Blauer was involuntarily injected with dangerous drugs in furtherance of a federal program for testing chemical weapons and the claims of a conspiracy stemming therefrom stated a claim of constitutional dimension. (*See* Opinion and Order, *Barrett v. Hoffman*, 76 Civ. 381, September 9, 1976).

However, the gravamen of the plaintiffs' § 1983 claim as set forth in the submissions in opposition to defendants' motions *now* appears to be that the defendants' alleged conspiracy to withhold from Harold Blauer's Estate various facts necessary to a fair settlement of the Estate's claims arising from Blauer's death deprived the Estate of property without due process. (Plaintiffs' Sur-reply Memorandum, dated October 27, 1980 at 31). By focusing upon the due process violations allegedly sustained by the Estate after Harold Blauer's death rather than upon the injuries the decedent allegedly sustained from the drug testing prior to his death, the plaintiffs have significantly altered the constitutional claim being pressed in this litigation. In its Opinion and Order of September 9, 1976 this Court expressly declined to decide whether the Estate of Harold Blauer or Elizabeth Barrett could claim deprivations of constitutional rights arising *solely* from the defendants' conduct in the alleged conspiracy to withhold from the Estate the information regarding the events surrounding Blauer's death.

■ The Court rejects plaintiffs' novel view of the due process obligations to be imposed upon the government in civil litigation. Plaintiffs seek to convert the equitable defense of fraudulent concealment— generally asserted as a justification for tolling the statute of limitations (*see* p. 320 *infra*)—into a cause of action for deprivation of due process merely because the al-

---

**10.** In light of the holding herein that plaintiffs' claims are time barred, the Court need not address the issue of whether the claims are barred by principles of res judicata and estop-

pel arising from Amy Blauer's settlement and release in 1955 and the action of the New York State Court of Claims in 1976.

leged concealing person is a government agency or officer. As far as this Court is aware, the due process requirements of the Fifth and Fourteenth Amendments have not yet been so expansively construed in civil litigation in which the government simply happens to be a party. Adoption by this Court of the rule espoused by the plaintiff would place upon the government in civil litigation a unique "duty to disclose", and would transmute a failure to disclose into a due process violation. The Court declines to impose such a *sui generis* burden. In the absence of a fiduciary relationship, there is no duty imposed upon a party—governmental or nongovernmental—to voluntarily disclose evidence or a cause of action in a civil suit. *Hauben v. Harmon*, 605 F.2d 920, 924 (5th Cir. 1979).[11] Within the context of civil litigation, the discovery rules and sanctions of the Federal Rules of Civil Procedure apply to agencies of the government in the same manner that they apply to any other litigant. *Amchem Products, Inc. v. GAF Corp.*, 64 F.R.D. 550 (D.Ga.1974); *NAACP Western Region v. Hodgson*, 57 F.R.D. 81 (D.D.C.1972). The sanctions available under Fed.R.Civ.P. 37 for failure to comply with discovery requests may be imposed upon governmental agencies. *Kahn v. Sec. of Health, Education and Welfare*, 53 F.R.D. 241 (D.Mass. 1971). Thus, the Court concludes that the government stands equal before the law with any civil litigant subject to the same rules of discovery, Wright and Miller, *Federal Practice & Procedure*, § 3652, n. 1; it should have no added burden to voluntarily disclose information relevant to an opponent's cause of action, particularly when, as here, there has been a failure by the adverse party to diligently utilize available procedures in an effort to ascertain such information.

■ Accordingly, the Court finds that the alleged fraudulent concealment by government officials herein, *pressed on behalf of the Estate and Barrett individually* as a deprivation of property without due process, does not give rise to a cause of action for deprivation of constitutional rights under § 1983.[12] The sole cognizable *constitutional* claim herein arises from the treatment of Harold Blauer prior to his death.

## STATUTE OF LIMITATIONS

### A. The Federal Tort Claims Act

■ The plaintiffs' claims against the United States under the Federal Tort Claims Act rest upon the alleged tortious negligence of the federal government in administering and supervising the program which dispensed the drugs which caused Harold Blauer's death. The defendant United States moves to dismiss the claims as time barred.

■ The Act provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues..." (28 U.S.C. § 2401(b)). Because the Act is a waiver of sovereign immunity the limitation period must be strictly construed and exceptions thereto are not to be implied. *United States v. Kubrick*, 444 U.S. 111, 114, 100 S.Ct. 352, 355, 62 L.Ed.2d 259 (1979); *Peck v. United States*, 470 F.Supp. 1003, 1018 (S.D.N.Y.1979). The plaintiff filed an administrative claim with the United States alleging negligence by employees of the federal government in the January 8, 1953 death of Harold Blauer. This administrative claim was filed in September 1975 and, thus, if the cause of action herein accrued more than two years prior to this date, the

11. Compare the limited duty to disclose evidence imposed upon the government in a criminal context. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Shelton*, 588 F.2d 1242 (9th Cir. 1978); *United States v. Sherman*, 426 F.Supp. 85, 90 (S.D.N.Y.1976);

Fed.R.Crim.P. 16; *People v. Jones*, 44 N.Y.2d 76, 404 N.Y.S.2d 85, 375 N.E.2d 41 (1978).

12. The Court need not address the scope of the due process rights of an Estate and whether an Estate suing on its own behalf for alleged violations of its due process rights is a "person" within the meaning of § 1983.

action would be time barred under § 2401(b).

The central issue raised by this motion is when the plaintiffs' cause of action accrued. The question of when a claim against the United States "accrues" within the meaning of § 2401(b) is addressed in neither the legislation nor in the pertinent legislative reports. *Lee v. United States,* 485 F.Supp. 883, 886 (E.D.N.Y.1980). The accrual date is, however, determined by federal law. *Steele v. United States,* 599 F.2d 823, 826 (7th Cir. 1979); *Kossick v. United States,* 330 F.2d 933, 935 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964).

 Ordinarily, a cause of action accrues when the tort is complete, i. e., when there has been an invasion of a legally protected interest of the plaintiff. Restatement (Second) of Torts § 899, comment c (1977). In actions charging negligence, such as is alleged here, accrual occurs when the harm or injury is inflicted. *Steele v. United States, supra* at 827; *Camire v. United States,* 489 F.Supp. 998, 1001 (N.D. N.Y.1980); *Lee v. United States, supra; Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1201 (1950). Using the traditional standard, i. e., when the injury occurred, plaintiffs' cause of action would have accrued when Blauer died in 1953 and this action clearly would be time-barred.

 The general rule that a cause of action accrues when the injury is inflicted has been liberalized in a few narrowly defined instances, particularly in the area of medical malpractice, to permit accrual when the injury is discovered. *See United States v. Kubrick, supra,* 444 U.S. at 113, 100 S.Ct. at 355; *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949) (cause of action does not accrue if plaintiff is ignorant of a condition or

injury which is "unknown" or "inherently unknowable"). Use of this so-called "discovery rule" [i. e., determining that a cause of action accrues upon discovery of the injury not when the injury actually occurs], arguably applicable only in the malpractice area, *Steele v. United States, supra* at 828; *Kington v. United States,* 396 F.2d 9 (6th Cir.), *cert. denied,* 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968); *Wollman v. Gross,* 484 F.Supp. 598, 603 (D.S.D.1980), has been expanded to encompass situations where the consequences or fact of an injury is latent and therefore unnoticed until after the limitations period has expired. *See Stoleson v. United States,* 629 F.2d 1265, 1269 (7th Cir. 1980); *Liuzzo v. United States,* 485 F.Supp. 1274, 1280 (E.D.Mich. 1980). The Seventh Circuit has expressed the view that "any plaintiff who is *blamelessly ignorant* of the *existence* or *cause of his injury* shall be afforded the benefits of the discovery rule." *Stoleson v. United States, supra* at 1269. (emphasis added) From the facts set forth hereinbelow it appears that plaintiffs were not blamelessly ignorant of the existence of the injury to Harold Blauer or its cause. Without resort to "the discovery rule," the cause of action would have accrued on January 8, 1953 when Blauer died and the alleged conspiracy commenced.[13]

However, application of "the discovery rule" in this case would merely postpone the accrual of the cause of action from January 1953 when Blauer died, until, at the latest, May of 1955 when the Estate discovered facts sufficient to trigger the running of the limitations period. Under either analysis, therefore, the action is time barred. Nonetheless, the Court will analyze the facts herein from the more liberal vantage point of "the discovery rule."

---

13. The crucial time for accrual purposes when conspiracy is alleged is when the plaintiff becomes aware that she is suffering from a wrong for which damages may be recovered in a civil action. *Singleton v. City of New York,* 632 F.2d 185, 192–93 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The existence of the conspiracy itself does not postpone the accrual of a cause of action arising from the conspirators' separate wrongs. "It is the wrongful act, not the conspiracy, which is actionable, whether that act is labelled a tort or a violation of § 1983. *Korry v. International Telephone & Telegraph Co.,* 444 F.Supp. 193 (S.D.N.Y.1978)." *Id.*

In *United States v. Kubrick, supra*, a medical malpractice action, the Supreme Court recently discussed the level of knowledge or facts about which a plaintiff must be aware in order for his cause of action to accrue under the Federal Tort Claims Act. In *Kubrick, supra* 444 U.S. at 113, 100 S.Ct. at 355, the Court addressed the issue of "whether [a] claim 'accrues' within the [Federal Tort Claims] Act when the plaintiff knows of both the existence and the cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute malpractice." Adopting the former accrual date, the Court held that the malpractice claim of a patient in a Veteran's Hospital, who was injected with an antibiotic and subsequently suffered a hearing loss, accrued when a physician told him that it was highly possible that his hearing loss resulted from the administration of the antibiotic, not when he was told several years later that the drug had caused his injury and should not have been administered. Thus, *Kubrick* holds that a cause of action accrues when a plaintiff is aware of the fact of his injury and its cause.

While formulations of the requisite level of knowledge under *Kubrick* vary considerably, knowledge of the fact of injury and the cause of injury are clearly critical.[14]

The rationale underlying the postponement of accrual until the plaintiff learns of both his injury and its cause rests upon the recognition that the injury itself may be latent and that the "facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *United States v. Kubrick, supra* 444 U.S. at 122, 100 S.Ct. at 359; *Liuzzo v. United States, supra* at 1281. Once in control of the critical facts

of injury and causation the injured party has sufficient information upon which to conduct an investigation of the merits of his claims. *United States v. Kubrick, supra.* In short, a cause of action against the government accrues under the Federal Tort Claims Act when a reasonably diligent plaintiff knows enough of the critical facts of injury and causation to protect himself by seeking advice in the medical and legal community. *Lee v. United States, supra* at 886; *Dessi v. United States*, 489 F.Supp. 722 (E.D.Va.1980).

Amy Blauer sought assistance in the legal community in 1953, less than three months after the death of her ex-husband. Nonetheless, plaintiff Elizabeth Barrett now contends that while the Estate was aware of the fact of ultimate injury to Harold Blauer—his death—it was unaware of the "cause" of Blauer's death—that the drugs were responsible for his death, that they were supplied by the United States government, or that they were administered without Blauer's permission as a part of a program for the testing of chemicals to be used by the Department of the Army.

As used in *Kubrick* the phrase "cause of the injuries" is unclear. The patient in *Kubrick* was aware that the Veteran's Administration doctors had administered the antibiotic. Hence, there was no need for the Court to address the "who" element of causation. Since the patient in *Kubrick* was allegedly unaware of "what" had precipitated his deafness, the Court focused its analysis on this element of causation and discussed the degree of notice sufficient to commence the running of the statute of limitations when knowledge regarding what caused a plaintiff's injuries is unavailable.

14. *See Lee v. United States*, 485 F.Supp. 883, 886 (E.D.N.Y.1980) ("whether a 'reasonably diligent' claimant *knows enough so that he 'can protect himself by seeking advice in the medical and legal community.'* "); *Peck v. United States*, 470 F.Supp. 1003, 1018 (S.D.N.Y.1979) ("when the plaintiff in the exercise of due diligence knew or should have known of the *facts giving rise to his cause of action*"); *Schnurman v. United States*, 490 F.Supp. 429, 435 (E.D.Va. 1980) (when plaintiff is "in possession of *crit-* ical facts concerning his injury and *its alleged cause*"); *Liuzzo v. United States*, 485 F.Supp. 1274, 1281 (E.D.Mich.1980) ("when the plaintiff had knowledge of the 'critical facts' regarding his injury.") *Dessi v. United States*, 489 F.Supp. 722, 724 (E.D.Va.1980) ("when the plaintiff knows, or in the exercise of reasonable diligence, should have known *both the existence and cause of his injury*." (Emphasis added).

Elizabeth Barrett here asserts that her mother and the Estate were unaware of *both* the "what" and the "who" ingredients of causation. Hence, it is incumbent upon the Court to inquire as to the level and scope of the plaintiffs' knowledge of the circumstances surrounding the death of Harold Blauer, and whether such knowledge was *legally* sufficient to commence the running the statute of limitations.

Initially, the Court rejects as "fanciful" the plaintiffs' claim that the Estate was unaware of "what" had caused Blauer's death. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). The Medical Examiner listed the cause of death on the 1953 autopsy report as: "Congestion of the Viscera; coronary arteriosclerosis; Sudden death after intravenous injection of a mescaline derivative, January 8, 1953." (Exh. 11, Plaintiffs' Motion for Reargument). The Estate does not deny that it had access to the autopsy report which described the death and revealed that it had occurred within two hours of an injection of a mescaline derivative. Indeed, in the complaint filed in the New York State Court of Claims, Amy Blauer charged that the decedent was negligently injected with a toxic substance which made him ill and resulted in his death. (*See* pp. 310–311 *supra*). The files of Amy Blauer's attorneys are replete with references to the drug. An office memo dated March 18, 1953 from the firm which initially represented Amy Blauer concludes: "... Fierman could not find out anything about the drug ... it seemed to be an experimental drug .... She [Amy Blauer] heard talk of 'an overdose' ..." (Exh.N, Def. Cattell's Motion to Dismiss). Another office memo dated March 13, 1953 details conversations between a member of the firm and Dr. Louis Winkelman regarding the Blauer death and the drug mescaline. (Exh. W, Def. Cattell's Motion to Dismiss). At the State Court of Claims settlement hearing on May 17, 1955, Dr. Paul Hoch testified that Harold Blauer "died directly as a result of the injection of drugs into his body." Finally, Amy Blauer's petition to the Surrogate of Nassau County dated April 30, 1956 stated "[t]hat on January 8, 1953, while decedent was a patient at the New York State Psychiatric Institute, a drug was administered which resulted in his death." (Exh.B Fed. Defs.' 9g Statement). Drawing every inference favorable to the plaintiffs these documents demonstrate that the Estate was aware of "what" had caused Blauer's death.[15]

Turning to the "who" component of causation, the Estate knew that the State of New York which operated the Institute was responsible for Blauer's death. Moreover, the Estate also knew that Doctors Hoch, Cattell and Schnack were involved in Blauer's treatment. However, it was unaware of the roles played by the Department of the Army and the United States government.

 Yet, lack of knowledge of the identity or status of *all* tortfeasors does not defer accrual of a cause of action, particularly where the identity of at least one such

---

**15.** The Court reaches this conclusion despite the plaintiffs' attempt to create a disputed issue of material fact on this question through the affidavit of Michael M. Baden, Deputy Chief Medical Examiner of the City of New York. (Appendix A, Plaintiffs' Memorandum in Reply to Motion to Dismiss). Focusing on the facts allegedly omitted by the New York State Psychiatric Institute in the report sent to the Medical Examiner's Office in 1953, Baden concludes that the cause of death was improperly reported on the autopsy report as "coronary arteriosclerosis." The autopsy report's reference to "Sudden death after intravenous injection of a mescaline derivative, January 8, 1953" is said by Baden to indicate "a temporal association between the death and the drug," not a causal relationship. From this affidavit the Court is asked to conclude that the Blauer Estate could not have been aware that the mescaline drugs administered to decedent at the Institute caused his death. This conclusion is belied by the language of Amy Blauer's complaint in the New York State Court of Claims, the references to the drug in the files of Amy Blauer's attorney, the testimony of Dr. Paul Hoch at the settlement hearing on May 17, 1955, and Amy Blauer's petition to the Surrogate of Nassau County in April 1956. In short, Baden's affidavit relying solely on the death certificate overlooks other information available to the Court.

tortfeasor is known. Federal precedent supports the proposition that a plaintiff's ignorance of the identity of a tortfeasor will not excuse a delay of more than two years in pressing a tort claim against the government. *Wollman v. Gross*, 637 F.2d 544, 551 (8th Cir. 1980); *West v. United States*, 592 F.2d 487, 492 (8th Cir. 1979); *Steele v. United States*, 599 F.2d 823, 826 (7th Cir. 1979); *Lien v. Beehner*, 453 F.Supp. 604, 608 (N.D.N.Y.1978); *Baker v. United States*, 341 F.Supp. 494 (D.Md.1972); *Driggers v. United States*, 309 F.Supp. 1377, 1379 (D.S.C.1970). Thus, in *Steele v. United States, supra*, the federal tort claim against the Federal Aviation Administration was found to accrue at the time of plaintiff's injury despite the fact that he was wholly unaware at that time that the United States government was the third party allegedly negligent in failing to warn of the remote power switch which caused his injuries.

Barrett points to a single district court decision, *Liuzzo v. United States, supra*, in support of the proposition that a plaintiff's ignorance of the identity of one tortfeasor can delay the accrual of a cause of action under the Federal Tort Claims Act. While not binding upon this Court, the holding in *Liuzzo* does not suggest a different result herein. In *Liuzzo* the children of a slain civil rights worker commenced an action under the Federal Tort Claims Act alleging that the F.B.I. was responsible for their mother's death. Mrs. Liuzzo was killed in 1965 apparently by four members of the Ku Klux Klan who were subsequently apprehended. One of the assailants, Rowe, surfaced as a paid F.B.I. informant; his testimony was critical in convicting the other three of federal charges. Rowe testified that he had been aware that the murder was planned but had been powerless to prevent it. In late 1975 and early 1976 Rowe revealed for the first time that he had participated in acts of violence which were known to, and sanctioned by, the F.B.I. The Court ruled that the family's federal tort claim against the F.B.I. filed in October 1977 was not untimely. It is noteworthy that no civil action or inquiry had been commenced by decedent's family or Estate prior to October 1977.

The Court in *Liuzzo* held that "a cause of action accrues at the earliest point at which a plaintiff has knowledge of the critical facts surrounding his injury such that an investigation is both warranted and realistically possible." *Id.* at 1283. Unlike the *Liuzzo* plaintiffs, the Blauer Estate had sufficient knowledge of the critical facts surrounding Blauer's death to commence both an investigation and a lawsuit in the New York State Court of Claims as early as 1953. Moreover, the *Liuzzo* court found its decision not inconsistent with *Steele v. United States, supra*, and noted:

"[w]here a person is injured because of conduct known to be wrongful relative to a potentially dangerous physical object, that person has information adequate to investigate who had control over the object." *Id.*

Whether applied to the power switch in *Steele* or to the experimental drugs in this action, the *Liuzzo* Court's reasoning is persuasive that a plaintiff with knowledge of wrongful conduct with regard to dangerous items has a duty to probe for the identity of those who may have been responsible for the danger. The Blauer Estate commenced an action against only the State of New York. No further inquiry similar to that anticipated by the *Liuzzo* Court was undertaken by Blauer's Estate in 1953. Accordingly, the Estate's alleged lack of knowledge as to the identity of *all* of the tortfeasors responsible for Harold Blauer's death did not delay accrual of the Estate's cause of action.

In sum, relying upon the standards set forth in *Liuzzo, Kubrick* and the decisions cited hereinabove, the Court finds that the undisputed facts demonstrate that Amy Blauer as Administratrix of the Estate of Harold Blauer had legally sufficient knowledge of *who* had caused decedent's death no later than April of 1953 when she brought suit against one tortfeasor, the State of New York, for negligently injecting Harold Blauer with the drugs which caused his death. Further, at the latest, the Estate

was aware of *what* had caused Blauer's death in May of 1955 when Dr. Hoch testified at the State Court of Claims settlement hearing.

It appearing that the Estate and plaintiff's mother (plaintiff's predecessor in interest) had knowledge of the fact of Blauer's injury and its causes (both "what" and "who") sufficient to protect themselves by seeking advice in the medical and legal community at least twenty years before the filing of the Federal Tort Claims action here, the cause of action is barred by the Act's two year statute of limitations.

### B. *THE § 1983 CLAIMS*

In a § 1983 action federal courts must apply the statute of limitations applicable to the most similar State cause of action. *Board of Regents v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). In this Circuit, the three year limitations period provided in New York Civil Practice Law § 214(2) for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute" governs § 1983 actions. *Pauk v. Board of Trustees of the City University*, 654 F.2d 856 (2d Cir. 1981); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 & n.6 (2d Cir. 1980).[16]

Although the appropriate limitations period is determined by reference to state law, under § 1983, just as under the Federal Tort Claims Act, federal law determines when a claim accrues. *Pauk v. Board of Trustees of the City University, supra; Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). As set forth in *Singleton*, a federal claim accrues under § 1983 when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Id.*

at 191. Thus, the analysis relevant to the accrual and the timeliness of plaintiffs' claims under the Federal Tort Claims Act set forth hereinabove applies with equal force to the claims asserted in plaintiffs' § 1983 action. Therefore, since the plaintiffs' cause of action accrued not later than May of 1955 (*See* p. 319 *supra*), the § 1983 claims herein filed in 1976 and 1978 are clearly time-barred by the three year statute of limitations.

Barrett contends, however, that the limitations period for her § 1983 claims should be tolled under the equitable tolling doctrine of fraudulent concealment.[17] In § 1983 actions the federal court "is obligated not only to apply the analogous New York statute of limitations to ... constitutional claims, but also to apply the New York rule for tolling that statute of limitations." *Board of Regents v. Tomanio, supra*, 446 U.S. at 483, 100 S.Ct. at 1794; *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). Under New York law the Court may use its equity jurisdiction to extend the applicable limitations period when the defendant either fraudulently *conceals the cause of action* from the plaintiff, *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966), or when the defendant *induces the plaintiff by positive misrepresentation to abstain from the suit* until after the statute of limitations period has run. *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1972). *See Jordan v. Ford Motor Co.*, 73 A.D.2d 422, 426 N.Y.S.2d 359 (4th Dep't 1980). The plaintiffs contend that the defendants conspired to conceal from Blauer's Estate critical facts relevant to the circumstances surrounding decedent's death. It is averred that the role of the United States in the

---

**16.** Even assuming that the six year residual statute (NYCPLR § 213(1)) were the applicable limitations period, *Cullen v. Margiotta*, 618 F.2d 226, 228 n.2 (2d Cir. 1980), the result herein would be unaffected.

**17.** The limitations period of § 2401(b) of the Federal Tort Claims Act is jurisdictional and not subject to estoppel on grounds of fraudu-

lent concealment. *Best Bearings Co. v. United States*, 463 F.2d 1177 (7th Cir. 1972); *Childers v. United States*, 442 F.2d 1299 (5th Cir.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 99 (1971); *Peterson v. United States*, 428 F.2d 368 (8th Cir. 1970); *Frey v. Woodard*, 481 F.Supp. 1152 (E.D.Pa.1979); *Lien v. Beehner*, 453 F.Supp. 604 (N.D.N.Y.1978).

drug testing, the federal government's contribution to the settlement, the nature of the drugs used, and the purposes of the experimentation were withheld from the Estate before, during and after Amy Blauer commenced her action in the New York State Court of Claims.

Initially, and significantly, the Court notes that the fraudulent concealment portion of New York's equitable estoppel doctrine anticipates a situation where *a cause of action is so concealed* that *no litigation is commenced.* Clearly, that is not the situation here. Amy Blauer pursued at least one cause of action—to wit, the claims against the State of New York— in the State Court of Claims. In the view of this Court, that filing might itself preclude plaintiffs' reliance on the equitable estoppel doctrine.[18]

Nonetheless, accepting the allegations of the complaints as true, defendants may be said to have concealed from Amy Blauer that she had a cause of action against the United States government or officials thereof for their role in the drug experimentation program. This alleged concealment, while not to be applauded, does not in the view of this Court legally constitute fraudulent concealment as that doctrine has been enunciated by New York Courts.

In the absence of a fiduciary relationship mandating disclosure, failure to reveal the existence of a cause of action is not fraudulent concealment. *Simcuski v. Saeli, supra* at 443, 406 N.Y.S.2d 259, 377 N.E.2d 713. As this doctrine was recently articulated:

"Where concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing an action within the Statute of Limitations, the courts have invoked estoppel only where there was a fiduciary relationship which gave defendant an obligation to

inform plaintiff of facts underlying the claim (see *General Stencils v. Chiappa, supra;* 1 Weinstein-Korn-Miller, N.Y.Civ. Prac. par. 201.13).

. . . .

A party against whom a claim exists is not, without more, under a duty to inform the injured party thereof, and such failure to inform does not constitute the kind of fraudulent concealment which gives rise to an estoppel (*De Vito v. New York Cent. System,* 22 A.D.2d 600, 257 N.Y.S.2d 895)."

*Jordan v. Ford Motor Co., supra,* 73 A.D.2d at 424, 426 N.Y.S.2d 359. Similarly, a defendant's silence as to particular facts surrounding an alleged cause of action does not constitute fraudulent concealment unless the relationship of the parties imposes a duty to disclose.

The sole defendant herein who may be said to be in a fiduciary relationship with the decedent or his Estate is Dr. James Cattell. *Simcuski v. Saeli, supra* at 449, 406 N.Y.S.2d 259, 377 N.E.2d 713. Yet, there is no allegation—nor could there be—that Cattell concealed his own malpractice or negligence. Rather, it is alleged that he failed to disclose the negligence or participation of *other* tortfeasors. The Court rejects as untenable the plaintiffs' position that the duty to disclose which reposes in a fiduciary extends to causes of action which the fiduciary believes to exist against third parties.

The remaining defendants are federal officials, the Assistant Attorney General who represented the State in 1953, and the Commissioner of Mental Hygiene.[19] This Court is unaware of the existence of a fiduciary relationship or a special duty to disclose which is placed upon the government or its employees in civil litigation (*See* discussion *supra* at 314–315).

---

18. Further, the identities and roles of the defendants James Cattell, Blauer's treating physician at the Institute and Newton Bigelow, Commissioner of the New York State Department of Mental Hygiene, were known or were a matter of public record at the time of Blauer's death. Plaintiffs' claim of fraudulent concealment of the cause of action against these defendants is clearly without merit.

19. *See* note 7 *supra.*

Yet, even if the Court were to find that the defendants herein were fiduciaries of Blauer's Estate, and that the acts of the defendants constituted concealment, the plaintiffs would nonetheless be unable to prevail on the equitable estoppel theory asserted as a counter to the defense of the statute of limitations.

 A plaintiff asserting a claim of equitable estoppel to the statute of limitations must demonstrate that he himself was not negligent in discovering the wrong. *General Stencils, Inc. v. Chiappa, supra,* 18 N.Y.S.2d at 127, 272 N.Y.S.2d 337, 219 N.E.2d 169; McLaughlin, Practice Commentaries, C201:6(1) (1972). Equitable estoppel will not toll the statute of limitations when parties possess "timely knowledge" sufficient to place them "under a duty to make inquiry and ascertain for themselves all the relevant facts." *Augstein v. Levey,* 3 A.D.2d 595, 162 N.Y.S.2d 269 (1957), *aff'd,* 4 N.Y.2d 791, 173 N.Y.S.2d 27, 149 N.E.2d 528 (1958); *Renz v. Beeman,* 589 F.2d 735, 751 (2d Cir. 1978), *cert. denied,* 444 U.S. 834, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). In *Renz v. Beeman, id.,* the Second Circuit applied the New York law of equitable estoppel in an action to impose a constructive trust on shares of preferred stock. Finding the action time-barred because the plaintiffs had sufficient timely knowledge of the facts surrounding the alleged fraud to warrant further inquiry, the late Judge Gurfein noted:

> All that is necessary to commence the running of the statute is "knowledge of facts sufficient 'to suggest to a person of ordinary intelligence the probability that he has been defrauded.'" *Id.* at 751.

 Timely knowledge exists when a plaintiff can discover the concealment with reasonable diligence. *Id.* at 751–52. Thus, where affirmative acts of concealment are alleged, as here, the Court's inquiry must focus on whether Amy Blauer and her attorney negligently failed to discover a concealed cause of action. If they were aware of sufficient facts suggesting concealment then the Court must impose upon them a duty to conduct further inquiry with rea-

sonable diligence. Failure to undertake such inquiry renders the claim of equitable estoppel on grounds of concealment unavailing. An examination of the facts herein reveals that the plaintiff was aware of sufficient information reflecting concealment so that, in the exercise of diligence, a reasonable person or her attorney would have inquired further. The record also reveals that plaintiff failed to commence a diligent inquiry despite having had a full and fair opportunity to do so. Under such circumstances, the plaintiff may not rely upon the law of equitable estoppel to toll the statute of limitations.

The indications that the state may have been withholding information were apparent. At the outset, Amy Blauer's first attorney had difficulty obtaining information about the drugs.

In the State Court of Claims action Amy Blauer succeeded in obtaining a court order for the production of medical records and allowing the examination before trial of two physicians who had treated the decedent. This order was "apparently ignored." (¶ 40 Complaint, *Barrett v. Hoffman*). Yet, despite the past four years of discovery, the record is devoid of any indication that plaintiffs' predecessor sought to enforce that discovery order. The examination of the doctors was apparently scheduled to take place on January 12, 1954 at the New York Psychiatric Institute. (Exh. Y to Def. Cattell's Motion to Dismiss). There is nothing to suggest why the depositions never occurred or what steps, if any, Amy Blauer took to ensure compliance with the Court's order. Rather, the record herein reflects Amy Blauer's complete failure to pursue court-ordered discovery prior to making the determination that she would settle the Estate's claims against the State for $18,000.

Later, at the settlement hearing before Judge Young of the State Court of Claims in 1955 there was reference to Harold Blauer's hospital file in the testimony of Dr. Hoch. Assistant Attorney General Marcus offered the file during Hoch's testimony on May 17, 1955 and asked the Court to impound it so that ". . . it is not subject to the

view of anyone, . . . but it is taken into the physical possession of the Court and returned to me when Your Honor has finished with his use of it." Amy Blauer's attorney responded: "I, of course, have no objection at this time . . . but if the need should arise for my examination of that record, I will then present my feelings in the matter . . . . I don't think I will want to see it . . . . Should the need arise I will ask the Court's permission to see it." (Transcript of State Court of Claims Hearing, Exh. HH. Def. Cattell's Motion to Dismiss). Significantly, Blauer's attorney declined to cross-examine Dr. Hoch who was apparently aware of important facts relevant to the drug studies performed on Harold Blauer. In addition, the document which Amy Blauer signed released the State, the hospital, the doctors, and "the organization, group, governmental body or agency which furnished the drug used in the drug studies which resulted in the death of Harold Blauer." Yet, despite this language to which the State's attorney expressly referred at least twice during the settlement hearing (*see* p. 312 *supra*), neither Amy Blauer nor her attorney appear to have asked for any further clarification as to whom the release encompassed. This failure to pursue discovery, coupled with the failure at the settlement hearing to examine a witness who was familiar with the relevant facts surrounding Blauer's death, are particularly critical in light of the clearly apparent veil of secrecy in which the State sought to shroud the proceedings. The efforts to achieve secrecy were quite evident from the difficulties which Amy Blauer's attorney had in obtaining information about the drugs (*see* p. 318 *supra*), the State's apparent failure to comply with the discovery order, the manner in which the state assiduously protected the hospital records at the hearing, and the broad language of the release encompassing "the organization, group, or governmental body" which provided the drugs—all of these

events were ample warning signals that further inquiry was warranted. Having failed to make further inquiry, the Estate cannot be heard at this late date to claim that the cause of action against the United States was fraudulently concealed.

The Court rejects as mere conjecture plaintiffs' claim that the State of New York and hospital officials would not have revealed the salient facts surrounding Blauer's death if the Estate had pursued discovery.[20] Even if supported by the record herein, this averment does not lift from the plaintiffs the duty to inquire or to use due diligence in pursuit of such information when the facts reveal that such inquiry is warranted.

It appearing that the plaintiffs may not rely upon the fraudulent concealment principles of equitable estoppel to toll the statute of limitations in this action, and it further appearing that the cause of action herein accrued more than three years prior to plaintiffs' filing of the complaint in 1965, the § 1983 claims are time barred.

## CONCLUSIONS

The plaintiffs' claims against the United States under the Federal Tort Claims Act accrued not later than May of 1955 and are time barred under the Act's two year statute of limitations. The plaintiffs' claims against the individual defendants under § 1983 are barred under the applicable three year statute of limitations. The principles of equitable estoppel on the grounds of fraudulent concealment will not operate herein to toll the limitations period under § 1983 and the Federal Tort Claims Act. Accordingly, the defendants' motions to dismiss these actions as time barred are granted. The Clerk shall enter judgment for the defendants in each of these three actions.

SO ORDERED.

---

**20.** *See* Exh. 19, Plaintiffs' Memorandum in Support of Motion for Reargument and deposition of David Marcus. These documents indicate that State and federal officials may have revealed the experimental nature of the drugs and that the drugs were supplied by the federal government.