Elizabeth BARRETT, as Administratrix
of the Estate of Harold Blauer,
Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

Elizabeth BARRETT, Plaintiff-Appellant,

v.

David MARCUS, Newton Bigelow, James
Cattell, George Leonard, Van Sim, Wil-
liam Creasey, John Derrick, Harris
North, Herbert Greer and the Estate of
Amedeo Marazzi, Defendants-Appellees.

Elizabeth BARRETT, as an individual and
as Administratrix DBN of the Estate of
Harold Blauer, Deceased, Plaintiff-Ap-
pellant,

v.

Frederick LOUGH, Defendant-Appellee.

Nos. 748, 863 and 864, Dockets 81–6192,
81–7690 and 81–7700.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1982.
Decided Sept. 13, 1982.

Stuart L. Land, Washington, D.C. (Stephen M. Sacks, Richard P. Schifter, Arnold & Porter, Washington, D.C., Herbert K. Lippman, New York City, Richard A. Matasar, Ames, Iowa, of counsel), for plaintiffs-appellants.

Susan Millington Campbell, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty. for the Southern District of New York, Richard N. Papper, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee United States of America.

Frederick H. Block, New York City, for defendant-appellee David Marcus.

Paul L. Pileckas, Rome, N.Y. (Pileckas & Pileckas, Rome, N.Y., of counsel), for defendant-appellee Newton Bigelow.

Steven J. Ahmuty, Jr., New York City (Bower & Gardner, New York City, of counsel), for defendant-appellee James Cattell.

Before NEWMAN and CARDAMONE, Circuit Judges, and BURNS,* District Judge.

CARDAMONE, Circuit Judge:

Today's average citizen would doubtless be appalled, but probably not surprised, to learn that in the early 1950s, while conducting a chemical warfare experiment, the United States Army used certain individuals as test subjects. The experiment is shocking not because of its existence, but because the chemical tests were performed on these human guinea pigs without their consent. The individuals involved were not told that they were the subjects of an experimental and highly dangerous chemical warfare program. The case before us concerns one such subject who died after having a test drug administered to him.

In August 1975 the Secretary of the Army revealed that twenty-two years earlier Harold Blauer, a male civilian voluntarily undergoing treatment at the New York State Psychiatric Institute, died from the injection of a mescaline derivative administered to him while he unknowingly served as a test subject in an Army chemical warfare experiment. Following this startling disclosure Blauer's daughter, Elizabeth Barrett, commenced a number of actions both individually and as the administratrix of Blauer's estate, alleging negligence in the creation and administration of the drug testing program and conspiracy to cover up the facts surrounding her father's death. She sought relief primarily under the Fed-

* Honorable Ellen B. Burns, Judge of the United States District Court for the District of Connecticut, sitting by designation.

eral Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (FTCA), and the civil rights provisions of 42 U.S.C. § 1983. The defendants moved to dismiss on numerous grounds, including failure to state a claim, lack of personal jurisdiction, res judicata, statute of limitations, immunity, release and lack of standing. After permitting four years of discovery and considering voluminous submissions the district court concluded that "there are no genuine issues of material fact which must be determined at trial relevant to the issue of when plaintiffs' cause of action accrued," *Barrett v. Hoffman,* 521 F.Supp. 307, 314 (S.D.N.Y. 1981); it thereupon dismissed the claims as time-barred.

We are mindful that in our determination of this appeal we must restrain our personal abhorrence of the deplorable conduct displayed by the Army. With such constraint firmly applied, we find, nevertheless, that a number of disputed factual issues relating to accrual of these causes of action have been raised which compel us to conclude that plaintiffs must be afforded their day in court. We express no opinion as to the appropriate disposition of these issues at trial.

For the sake of brevity and in deference to the well written opinion below we assume familiarity with the background facts, procedural history and legal analysis outlined by the district court in *Barrett v. Hoffman, supra.*

## I

We begin, therefore, by turning to the question of when plaintiffs' cause of action under the Federal Tort Claims Act accrued. Title 28 U.S.C. § 2401(b) (1976) provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." It has generally been held that under the FTCA a tort claim accrues at the time of the plaintiff's injury, although in certain instances, particularly in medical malpractice cases, accrual may be postponed until the plaintiff has or with

reasonable diligence should have discovered the critical facts of both his injury and its cause. *United States v. Kubrick,* 444 U.S. 111, 120 n. 7, 100 S.Ct. 352, 358 n. 7, 62 L.Ed.2d 259 (1979); *Stoleson v. United States,* 629 F.2d 1265, 1268 (7th Cir. 1980); *Waits v. United States,* 611 F.2d 550, 552 (5th Cir. 1980); *Steele v. United States,* 599 F.2d 823, 827–28 (7th Cir. 1979); *Lee v. United States,* 485 F.Supp. 883, 885–86 (E.D.N.Y. 1980); *Liuzzo v. United States,* 485 F.Supp. 1274, 1280 (E.D. Mich. 1980).

The diligence-discovery rule of accrual is not often applied outside the medical malpractice area, *see, e.g., Steele,* 599 F.2d at 828, but may be appropriate in non-malpractice cases, *Liuzzo,* 485 F.Supp. at 1281, where plaintiffs face comparable problems in discerning the fact and cause of their injuries, *Stoleson,* 629 F.2d at 1269. Thus, any plaintiff who is blamelessly ignorant of the existence or cause of his injury should be accorded the benefits of the more liberal accrual standard. *Id.*

For example, the diligence-discovery rule has been applied where a plaintiff demonstrates that his injury was inherently unknowable at the time he was injured, *Quinton v. United States,* 304 F.2d 234 (5th Cir. 1962), and where the Government conceals its negligent acts so that the plaintiff is unaware of their existence, *Peck v. United States,* 470 F.Supp. 1003, 1018 (S.D. N.Y. 1979). In regard to the latter situation, "[r]ead into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C. Cir. 1977).

Although the existence of Blauer's injury (death) was clearly evident in the 1950s, we are faced with plaintiffs' allegations that the Army Chemical Corps actively covered up both its involvement in the affair and the nature of its misdeeds. If true, the substance of these allegations would consti-

tute deliberate concealment of material facts relating to the Government's wrongdoing and would trigger application of the diligence-discovery accrual standard. Plaintiffs presented evidence to support these assertions which was disputed, though not substantially controverted, by the Government.

For example, internal agency memoranda indicate that even after the Army agreed to declassify (from the previously "Secret" category) the nature of the drug which killed Blauer it insisted that, if revealed, the source of the drug should be identified as the Army Medical Corps rather than the Army Chemical Corps. In addition, the warfare research purpose for developing the compound and for administering it to Blauer was to remain classified defense information. Thus, there would only remain the deliberate false impression that the drug used on Blauer was administered for therapeutic purposes. When Blauer's estate brought a tort action in the New York State Court of Claims in 1953, Marcus, the Assistant Attorney General of New York responsible for defense of the suit, was "forcibly informed" that the legal proceedings should be limited to the "medical aspects" of the case; he was urged to postpone indefinitely the previously scheduled depositions of Institute doctors because, "due to security classification," they "would probably not be able to answer the questions which would be propounded." Marcus was further informed that nobody would be permitted to testify or disclose information "under threat of prosecution under the Espionage Act." The Army repeatedly urged that certain Institute documents connecting the Government with these events be turned over to the Army while litigation was pending so that, according to an Army memorandum, they could be placed "beyond the subpoena power of the plaintiff." Finally, when the suit was settled for $18,000 in 1955 the Government agreed to pay half of the settlement on the condition that its role and purpose for supplying the drug would be kept secret.

When this evidence of intentional concealment of material facts relating to the Army's responsibility in the matter of Blauer's death is considered, it appears that application of the diligence-discovery rule is warranted in this case. Consequently, plaintiffs' cause of action accrued when they discovered or should have discovered the critical facts of Blauer's injury and its cause. *Kubrick, supra.* Since the injury was immediately known, the crucial question is when Blauer's family should have discovered the critical facts relating to the cause of his death.

■ The Supreme Court recently discussed the extent of knowledge which a plaintiff must possess in order for his claim to accrue under the FTCA. *Id.* In *Kubrick* the plaintiff argued that his FTCA claim did not accrue when he knew that he had suffered a hearing loss which probably resulted from treatment with an antibiotic. He insisted that the claim accrued when he was first informed that the antibiotic was negligently administered. The Court rejected this contention because the plaintiff, armed with the knowledge that the antibiotic caused his injury, could simply have consulted experts to discover that he had a cause of action for negligent administration of the drug. The Court stated:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and *the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.* The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and *who* has inflicted the injury. He is no longer at the mercy of the latter.

*Kubrick,* 444 U.S. at 122, 100 S.Ct. at 359 (emphasis added).

The Government, apparently viewing this case as a routine medical malpractice action like *Kubrick,* contends that the cause of

death was injection of the drug and that this was known to the estate in 1953 or, at the latest, when the Court of Claims action was settled in 1955. One serious flaw in its analysis, however, is that this is not an action for simple malpractice. Comparison of the allegations in the Court of Claims complaint, which was based on malpractice, with those in the present suit illustrate the distinction. In its suit against New York State Blauer's estate alleged that the defendant's incompetent and inexperienced agents were negligent in administering an overdose of a toxic substance to which the decedent had previously suffered an adverse reaction, and in applying improper care to revive Blauer after the injection. These critical facts were known in the 1950s. By way of contrast, the plaintiffs in the present suit contend that the United States Government was negligent in creating, administering and supervising a program pursuant to which the decedent was involuntarily given an untested drug "solely for experimental purposes" and "without any proper diagnostic or therapeutic purposes." The gravamen of the FTCA claim is that the real reason Blauer died was not medical incompetence, but the fact that he was used as a human guinea pig. These critical facts concerning causation were not known and probably not discoverable until the Army made its disclosure in 1975.

Thus, critical facts about causation and who inflicted Blauer's injury were in the control of the Government and very difficult for his estate to obtain. Indeed, the evidence indicates that some critical facts, such as the identity of the tortfeasor and the purpose for administering the drug, would not have been revealed no matter how diligently the estate had pursued its case in the 1950s.

It is not even clear that Blauer's family knew that he died solely as the result of administration of the drug. Although the estate sought and obtained a discovery order in the Court of Claims action for all records relevant to Harold Blauer, some documents were not made available (e.g., minute-by-minute detailed descriptions of decedent's reactions to the drug injections),

see *Waits v. United States,* 611 F.2d 550 (5th Cir. 1980), and others contained material misrepresentations (that the drug study was for diagnostic and therapeutic purposes, that Blauer's reaction to the drug was "atypical" and that he had previously received the drug "with no untoward response"). Relying on this same false and misleading information the coroner's office issued an autopsy report which listed the cause of death as "Congestion of the Viscera; *Coronary arteriosclerosis;* Sudden death after intravenous injection of a mescaline derivative" (emphasis added). This report led to the further misimpression that a heart condition was at least partly responsible for Blauer's demise. To show that a factual issue concerning the cause of death existed in 1953–1955, plaintiffs have submitted an affidavit from the Deputy Chief Medical Examiner for the City of New York stating that had the true facts been known the autopsy report would have noted the cause of death as "Convulsive seizures, hypotension and cardio-respiratory arrest immediately following and due to intravenous injection of a mescaline derivative for investigative purposes." Although the estate was probably aware in the 1950s of the connection between the injection and the decedent's death, Amy Blauer may well have settled the Court of Claims suit for a significantly lesser sum than she would otherwise have insisted upon had she known that the drug, whether therapeutic or not, was the sole cause of death. The extent of Amy Blauer's knowledge concerning the cause of death is therefore another factual issue going to accrual which must be resolved at trial.

The situation in this case is similar to that presented in *Ware v. United States,* 626 F.2d 1278 (5th Cir. 1980). The Department of Agriculture had mistakenly found Ware's cattle to be suffering from tuberculosis and ordered them killed. Ware was permitted to sue the Government more than two years (the applicable limitations period) after the event. He immediately knew of the injury, the death of his cattle, and its direct cause, that they were put to death.

The critical causative fact that he did not know until later was that they need not have been slaughtered. Likewise, Blauer's family knew that he had died and that the direct cause of his death was, at least partly, the mescaline injection. What it was unaware of and had no reason to suspect, as in *Ware,* was that this was a death without reason caused by the Government's alleged negligence.

Not only was the "what" element of the causation inquiry arguably unknown to the plaintiffs until 1975, but the "who" element was also missing from the puzzle. See *Barrett,* 521 F.Supp. at 317. Cases which have held that the identity of the Government as a potential defendant need not be known to a plaintiff in order for his FTCA cause of action to accrue involved situations where the "who" element was not actively being concealed. In those cases diligent discovery would have revealed the Government's role. *See, e.g., Wollman v. Gross,* 637 F.2d 544 (8th Cir. 1980), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *Steele, supra; West v. United States,* 592 F.2d 487 (8th Cir. 1979); *Lien· v. Beehner,* 453 F.Supp. 604 (N.D.N.Y. 1978).

Here there exist factual disputes both as to whether diligence was employed by the estate without success and whether the role of the Army Chemical Corps would in any event have been revealed. Thus, the instant situation is unusual because even if the plaintiffs knew what caused Blauer's death, the path to unmasking who was responsible may well have been blocked. It is illogical to require a party to sue the government for negligence at a time when the Government's responsibility in the matter is suppressed in a manner designed to prevent the party, even with reasonable effort, from finding out about it.

Like *Liuzzo,* 485 F.Supp. at 1283, "[t]his case presents an instance in which knowledge of the identity of the tortfeasor is a critical element to the accrual of a claim." In *Liuzzo* the children of a slain civil rights worker were permitted to bring an action under the FTCA many years after their mother's death. At that time it was re-vealed that a paid F.B.I. informant, whose testimony had helped convict certain Ku Klux Klansmen of the murder, had personally participated in the killing. There, as here, misrepresentations and concealed information had justifiably led the plaintiffs to believe that those responsible for their parent's death had been punished. The court in *Liuzzo* concluded that, based on the information known at the time, the plaintiffs had no reason to investigate further the cause of their mother's death because they justifiably believed the three apprehended Klansmen were responsible. The court also stated that even if the children were obligated to look more deeply into the matter, it was not clear that the F.B.I. would reasonably have been a target of their inquiry.

Similarly, Blauer's family had no reason to investigate any further based on the information available to it in the 1950s. It was deliberately led to believe that the cause of death was a therapeutic injection of mescaline which had possibly aggravated a preexisting heart condition. Moreover, even if the family had cause to pursue the matter, it would have had even less reason to focus on the Army Chemical Corps as a target of its investigation than the Liuzzo children had to center on the F.B.I. (which the Liuzzos at least knew had agents working within the Klan). Even if Blauer's estate had probed so far as to discover the source of the drug, it would have been given the innocuous misinformation that the supplier was the Army Medical Corps.

In short, factual disputes as to the extent of the Government's concealment and the diligence exercised by Blauer's estate in the 1950s preclude us from disposing of this matter without a trial on these issues. We cannot conclude that as a matter of law the FTCA claim accrued prior to 1975.

## II

In addition to their FTCA cause of action against the United States Government, plaintiffs present a broad civil rights claim against various individuals based on 42 U.S.C. § 1983 (1976), which they argue in two parts:

1. A conspiracy to perform non-therapeutic chemical tests on the decedent carried out under color of state law caused him to suffer personal injury amounting to cruel and unusual punishment and a deprivation of his constitutional rights to life, liberty, property and equal protection.

2. As the result of a conspiracy carried out under color of state law to cover up the true facts surrounding Blauer's death, the decedent's estate/beneficiaries were deprived of their constitutional right to property, consisting of their causes of action for reasonable compensation for Blauer's death, without due process of law.

In regard to the latter, plaintiffs are not stressing that the defendants had an affirmative duty to come forward with evidence but, rather, that there was a conspiracy deliberately to keep the truth from his widow Amy Blauer.

■ By order dated September 9, 1976 the district court ruled that the first of these assertions alleged deprivations of constitutional dimension and stated a valid § 1983 claim. As the court below noted, requisite state action is sufficiently alleged in the complaints' assertions that Blauer's death resulted from a contract entered into by a state-created institution established under New York Mental Hygiene Law § 420, and that the illegal acts complained of were performed by state-employed physicians while Blauer was in the state-maintained facility. Constitutional deprivation is found in the allegation that the defendants performed drug experiments in a manner which "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). *See Williams v. Vincent,* 508 F.2d 541, 543–44 (2d Cir. 1974). *Cf. Nelson v. Heyne,* 491 F.2d 352, 356–57 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) (use of tranquilizers on boys in correctional school may amount to cruel and unusual punishment); *Mackey v. Procunier,* 477 F.2d 877 (9th Cir. 1973) (experiments with mind-altering drugs on prisoners in state mental facility is actionable under § 1983). The first part of plaintiffs' civil rights claim, the claim "belonging" to Blauer for his personal injuries, therefore states a proper § 1983 cause of action.

■ Blauer passed away without having had the opportunity to assert his civil rights claim. When a party dies before pursuing his cause of action under § 1983, the claim survives for the benefit of his estate if applicable state law creates a right of survival. *Brooks v. Flagg Bros., Inc.,* 553 F.2d 764, 768 n. 7 (2d Cir. 1977), *rev'd on other grounds,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Under New York law the claim arising from the infringement of Blauer's civil rights survives his death and may be asserted by his personal representative. *See id.;* N.Y. E.P.T.L. § 11–3.2(b) (McKinney 1982). Blauer's personal representative would be Elizabeth Barrett, but only in her capacity as administratrix of her father's estate. *See* N.Y. E.P.T.L. § 1–2.13 (McKinney 1982). Thus, Barrett as administratrix has standing to assert this civil rights claim in her father's name for his personal injuries.

We turn now to the second part of plaintiffs' civil rights actions. In order to make out a valid § 1983 claim for their own injuries plaintiffs must demonstrate that: (1) the defendants subjected them to the deprivation of a federally protected right, (2) the defendants were acting under color of state law, and (3) plaintiffs are "persons" as that term is used in the statute with reference to injured parties. *See* 42 U.S.C. § 1983.

■ The deprivation which plaintiffs were allegedly subjected to was loss of property—the amount of compensation they would have received for Blauer's death had the true facts been known—without due process of law. This property would include the difference between the $18,000 received in settlement of the 1953 Court of Claims suit and the amount the estate would have received absent government concealment, plus the value of any other legal action (specifically, the FTCA suit) which might have been brought had the

whole truth been known.[1] We must therefore first determine, regarding the FTCA action, whether statutory entitlement to a cause of action is a species of property protected by the Due Process Clause of the Fourteenth Amendment and, regarding the Court of Claims action, whether the full value of a lawsuit is property protected by the Due Process Clause.

In a recent unanimous Supreme Court opinion Justice Stevens noted that a cause of action for wrongful death created by state law is arguably a species of property protected by the Due Process Clause. *Martinez v. California,* 444 U.S. 277, 281–82, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980). By analogy, plaintiffs' potential FTCA cause of action should be viewed as a protected property interest. Plaintiffs had a legitimate claim of entitlement created by federal law to bring such an action. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Hence, plaintiffs had a federally protected right not to be deprived of their property interest in the FTCA action without due process. As discussed in Part I above, there is at least a factual issue as to whether defendants subjected them to a deprivation of this right.

Whether the true value of the Court of Claims action, something in excess of the $18,000 settlement, is a species of constitutionally protected property is somewhat less certain. In this instance, as distinguished from the FTCA situation, the cause of action itself against New York State was not concealed—Blauer's estate did sue and did receive some compensation. What plaintiffs are essentially claiming, however, is that the defendants' obstruction of justice in conducting a defense to that action deprived them, not of the whole of their constitutionally protected property consisting of the lawsuit, but only of a part of that protected property amounting to an increment in its value. Statutory or common law entitlement to be fully compensated through a lawsuit for one's injuries should be considered a species of property for the same reason that statutory entitlement to bring such a lawsuit at all is so considered. In other words, plaintiffs have a legitimate claim of entitlement to the "incremental" property in question which derives from the same state law that entitled them to the $18,000 settlement. Again, plaintiffs present at least disputed factual issues as to whether the defendants deprived them of this federally protected right.[2]

Turning to the second element of a § 1983 claim, the record is clear that the defendants were acting under color of state law in allegedly depriving plaintiffs of their just compensation. Aside from the general allegations of concealment by New York State medical personnel (e.g., ignoring the court order to produce certain documents), plaintiffs present evidence of concealment by the New York State Assistant Attorney General and the Court of Claims judge. In defending the 1953 Court of Claims action Assistant Attorney General Marcus, as discussed earlier, deliberately prevented the scheduling of depositions. Further, he secretly met *ex parte* with the trial judge prior to trial to tell him of the chemical warfare experiments, the United States Government's involvement and the necessity of concealing this information in the interest of national security. Consequently, when a hearing was later held to consider the settlement reached by the parties, false and misleading testimony and findings of fact were submitted to and accepted by the court. For example, Dr. Hoch testified that Blauer received a "commonly"-used, well-known, safe drug so that his condition "could best be diagnosed and treatment

---

1. We express no opinion as to the value of either of these actions. Nor do we address the possibility that, if full compensation was awarded in one suit, the other suit would merely hold another party liable for the same sum.

2. Compare our earlier discussion of interference in the Court of Claims suit with *Hiney v.*

*Wilson,* 520 F.2d 589 (2d Cir. 1975) (confiscation of legal papers is a cognizable civil rights claim) and *Sigafus v. Brown,* 416 F.2d 105 (7th Cir. 1969) (deprivation of papers needed for use in judicial proceeding constitutes denial of due process and may violate § 1983).

thereafter given." Later he refused to state categorically that he would have injected this mescaline derivative in the absence of the research contract. Additionally, plaintiffs submitted the affidavit of another expert in the field who attested that the records reveal no diagnostic or therapeutic purpose whatsoever for the injections administered to Blauer.

Finally, plaintiffs are injured parties who have standing to assert their own § 1983 claim. It is self-evident that Barrett in her individual capacity is a "person." See 42 U.S.C. § 1983. Barrett in her role as administratrix of the estate should also be considered an injured "person" for the purposes of § 1983. Corporations, because they are "associations of individuals united for a special purpose," have long been viewed as persons for due process purposes, *Pembina Consolidated Silver Mining and Milling Co. v. Pennsylvania,* 125 U.S. 181, 189, 8 S.Ct. 737, 741, 31 L.Ed. 650 (1888), and may be § 1983 plaintiffs, see, e.g., *Safeguard Mutual Insurance Co. v. Miller,* 472 F.2d 732, 733 (3d Cir. 1973) and cases cited therein. Unions and unincorporated associations have also been found to possess standing to assert a § 1983 claim. *Kennedy Park Homes Association v. City of Lackawanna, N.Y.,* 436 F.2d 108 (2d Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971), (unincorporated association); *Elk Grove Firefighters Local No. 2340 v. Willis,* 391 F.Supp. 487, 488–91 (N.D. Ill. 1975) (union). Similarly, the individuals represented by an estate administratrix are associated for a special purpose. These persons suffer when the estate, through its representative, is deprived of due process, just as the individuals comprising a corporation or a union suffer when the entity, through its representatives, is so deprived. We hold therefore that the administratrix of Blauer's estate has standing to sue for deprivation of the estate's right to due process.

III

We have established that plaintiffs theoretically may assert both parts of their § 1983 claim. Now we must determine whether they are barred by the statute of limitations. As the court below found, a three year limitations period is applicable to this civil rights action and federal law determines when the claim accrues. *Barrett,* 521 F.Supp. at 320. Under federal law a § 1983 claim accrues when the plaintiff " 'knows or has reason to know of the injury which is the basis of his action.' *Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir. 1977)." *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

The injury which is the basis of the first part of plaintiffs' civil rights action is Blauer's use as an unwitting test subject resulting in his suffering and death. The injury which forms the basis of the second part of plaintiffs' § 1983 claim is the deprivation of just compensation for Blauer's death owing to the alleged cover-up. In both instances, our previous discussion illustrates that plaintiffs have raised factual issues concerning whether or not they had reason to know of these injuries. Hence, the issue of accrual under the Civil Rights Act, as under the FTCA, must await resolution of the disputed factual claims at trial.[3]

For the reasons outlined above the decision of the district court granting summary judgment is reversed and the case remanded for trial in accordance with this opinion.

---

**3.** In view of this holding we find it unnecessary to reach the question, discussed by the court below, of whether the equitable doctrine of fraudulent concealment acts to toll the § 1983 claims. *See Barrett,* 521 F.Supp. at 320–23.