Elizabeth **BARRETT, Individually and as Administratix of the Estate of Harold Blauer, Deceased, Plaintiff,**

v.

**UNITED STATES of America, James Cattell, Newton Bigelow, Estate of Amedeo S. Marrazzi, Van M. Sim, Herbert K. Greer, Frederick C. Lough, Estate of Harris J. North, William M. Creasy, and George S. Leonard, Defendants.**

**No. 76 Civ. 381 (CBM).**

United States District Court,
S.D. New York.

Oct. 3, 1986.

Baer, Marks & Upham by Deborah R. Linfield, Eugene R. Scheiman, New York City, for plaintiff.

Pileckas & Pileckas by Paul L. Pileckas, Rome, N.Y., for defendant Newton Bigelow.

MOTLEY, Senior District Judge.

OPINION

Plaintiff has brought suit against the United States of America and various state and federal employees in connection with the 1953 death of Harold Blauer resulting from Army-sponsored chemical warfare experiments, and in connection with the alleged subsequent conspiracy by various individuals to cover up the Army involvement in the events that led to Mr. Blauer's death. Discovery is completed and defendant Newton Bigelow has now moved for summary judgment. For the reasons that follow, this motion is denied.

*Facts*

From about 1950 to 1954 Newton Bigelow was Commissioner of Mental Hygiene of the State of New York. The New York Psychiatric Institute, the research facility where Harold Blauer's death occured, was one of the many state hospitals and teaching facilities for which Dr. Bigelow had responsibility as Commissioner of Mental Hygiene. During Dr. Bigelow's tenure, contracts were signed between the Department of Army and the New York Psychiatric Institute for research on mescaline derivatives. The contracts were sent to Dr. Bigelow, although it was Dr. Lewis, the Director of the New York Psychiatric Institute, who ultimately signed them. Furthermore, Daniel Doran, a fiscal expert who had been authorized by Dr. Bigelow to review and approve contracts, had reviewed these research contracts and had also communicated with Dr. Lewis about their approval.

Dr. Bigelow's daughter, Ann Bigelow, was a nurse at the New York Psychiatric Institute at the time that the allegedly wrongful series of research experiments was being performed on Harold Blauer. Ms. Bigelow herself prepared several sets of observation notes on Mr. Blauer during this time. The notes indicate that Mr. Blauer had complained about the effects of the experiments.

Harold Blauer died at the New York Psychiatric Institute on January 8, 1953 after being injected with an experimental mescaline derivative that had been supplied pursuant to one of the aforementioned Army contracts. Dr. Bigelow was informed of the patient's death on the same day. Dr. Bigelow then requested a special report on the death and was subsequently informed that Harold Blauer had died following an injection of mescaline preparation.

A lawsuit against the New York Psychiatric Institute and Harold Blauer's doctors was filed by Harold Blauer's widow in 1953. Dr. Bigelow was in communication with David Marcus, the New York State Assistant Attorney General handling the case, regarding a possible settlement of the lawsuit. Dr. Bigelow knew at this time that the fact of the research contract's existence and also the fact that the Army had supplied the drug which killed Harold Blauer were both secret and classified.

*Discussion*

■ In order to prove the liability of a supervisor or high official under 42 U.S.C. Section 1983 for unconstitutional acts performed by persons under his authority, it is not necessary to prove the supervisor's active involvement in the wrongful behavior. Instead, a supervisor or other high official may be found liable under Section 1983 if he had either actual or constructive notice of the unconstitutional behavior, such that the failure to curb the subordinates' wrongful acts could be classified as "gross negligence," or as "deliberate indifference" to the alleged infractions of constitutional rights. *McCann v. Coughlin,* 698 F.2d

112, 125 (2d Cir.1983). Such a finding of direct, albeit passive, liability for the unconstitutional conduct renders unavailable to defendant the defense that *respondeat superior* alone supplies an inadequate basis for liability. *Id.*

■ Accordingly, Dr. Bigelow's mere assertions that he was unaware of the existence of the research contracts at issue here, and was unaware of the alleged improprieties in their manner of implementation, are of little avail to the avoidance of liability under Section 1983 for Harold Blauer's death, especially in a summary judgment context. Clearly—and notwithstanding Dr. Bigelow's contention that he knew nothing of the Army contracts or their manner of implementation—there remains a disputed issue of fact as to whether Dr. Bigelow had actual or constructive notice of the alleged constitutional violations occuring at the New York Psychiatric Institute such as to make him potentially liable under Section 1983 for "gross negligence" or "deliberate indifference" in the face of constitutional infractions.

From the undisputed facts thus far presented in this case, plaintiff has demonstrated the existence of a colorable factual dispute as to whether Dr. Bigelow had sufficient actual or constructive notice of the goings on at the Psychiatric Institute to make him potentially liable for his failure to curb the alleged abuses. At the very least, by the fact that they were sent to Dr. Bigelow and were reviewed by Daniel Doran, it has been shown that Bigelow may have had constructive notice of the secret research contracts between the Psychiatric Institute and the Army involving the use of novel psychopharmaceutical substances. Arguably too, knowledge merely that the contracts existed may have given Bigelow constructive or actual notice of the manner in which they were being implemented, if only by putting him on alert to the obvious potential for abuse.

In addition, from the facts now before the court, there exists the distinct possibility that during the period preceeding Harold Blauer's death, Dr. Bigelow may have had conversations with his daughter, a nurse at the Institute who worked with patients receiving the experimental drugs. Such conversations, had they occurred, would or should have put Dr. Bigelow on notice of possible abuses. Although Dr. Bigelow now denies recalling that any such personal conversations occurred, the issues of whether or not they did occur, and the implication for a finding of notice and of consequent gross negligence or "deliberate indifference" in the sense of *McCann v. Coughlin, supra*, remain disputed factual issues.

Similarly open to continued factual dispute is Dr. Bigelow's alleged liability in the post-death conspiracy to cover up the Army's role in the death of Harold Blauer. Enough has been proved of Dr. Bigelow's communications with David Marcus, the New York State Assistant Attorney General on the case brought by Blauer's widow, and of Bigelow's knowledge subsequent to Blauer's death of the Army's role in it, to render it a disputed issue of material fact whether Bigelow's apparent inaction in the face of the cover-up amounted to the kind of gross negligence or deliberate indifference that would render him liable under applicable case law.

Finally, Dr. Bigelow also asserts as a second ground for his summary judgment motion that there is no disputed issue of fact to preclude the running of the applicable statute of limitations as to him personally. Because he is in no way liable for the alleged Army cover-up subsequent to Harold Blauer's death, claims Dr. Bigelow, the statute of limitations with regard to him ran out in 1956.

■ As there has yet been no finding clearing Dr. Bigelow of liability with respect to the post death cover-up, this argument is clearly without merit. Moreover, it would seem that regardless of Dr. Bigelow's implication in the post-death conspiracy, and as the Second Circuit has already held in *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982), whether the statute of limitations in this action has expired and thus bars plaintiff from bringing this suit,

is a factual issue which depends on the applicability of the "diligence-discovery rule," and can only be resolved at trial. Dr. Bigelow is not exempt from this holding.

CONCLUSION

Accordingly, the motion for summary judgment by defendant Newton Bigelow is denied, there yet remaining disputed issues of material fact in plaintiff's case against him.